Mr. Reed, good morning. Good morning, Your Honors. Barry Reed of Zimmerman Reed, Minneapolis and Scottsdale, Arizona. We're appearing on behalf of the class. And what we are doing here essentially is to point out for the court how quickly and readily this appeal can and should be granted simply based upon the existing law in this circuit. Defendants tried very hard to obfuscate that which is incredibly obvious. They have waived any right to use the Argonne outcome to preclude any claim in Minnesota. They wanted to litigate in both places. They get both places, plain and simple. In England, where I come from, we have an old proverb about you make your bed, you go lie in it. And that is exactly what this appeal is about. Did you file your motion for reconsideration under Rule 59 or Rule 60? It was under Rule 60 because we were clearly in a position based upon the content or lack of content of Judge Jones's injunction. We're not in a position until there was a ruling in Minnesota to know exactly what we were appealing from. The problem was Judge Jones's order simply said that the court in Minnesota could not do anything contrary to what had happened in Argonne. Well, since the question of state law had not, as far as we could tell, been litigated, and certainly not the Minnesota standards had not been litigated in Argonne, since the question of penalties had not been litigated in Argonne, and since the question of an injunction had not, as far as we could tell, been determined in Argonne, what the judge was enjoining depended upon what the Minnesota judge thought he was enjoining. We didn't know. We had no reason to appeal that because, as far as we were concerned, the Minnesota judge could enter an injunction, enter the penalties, and make his own determination under Minnesota state law without doing anything that was, quote, contrary to what had happened in Argonne. So, in other words, until Judge Larson decided what he thought Judge Jones meant, anything we did would have been pure speculation. And I think if we'd have come to this court and said, Judge Larson hasn't done anything yet. He's been told not to do anything that's contrary, and we want to appeal the word contrary. So, contrary to what? We don't know. I think this court would have said, well, come back when you know what you're appealing. And I think certainly the defendants would have said, you're speculating. There's nothing to appeal. Let me ask you a question. Were you in the cheap seats during the last case? Yes. Mr. Boutrous suggested that if we resolve the ‑‑ if we're not able to resolve the state law claims, if Judge Jones was not correct that the state law claims are identical to the federal law, that we would have to have a remand. Wouldn't that then automatically require that we vacate the injunction because there is no more final judgment that encompasses state law claims? His judgment would be set aside. Therefore, the judgment would have to be vacated just on that basis alone, is that? Yes. At that point, Mark, the only decision extant as to violation of the Minnesota statute would be the jury's verdict in Kennedy County. You know, what happened, how it plays out, I'm not quite sure, but I don't see how if we were to reverse the state claims, for example, the injunction could stand. No, the injunction could not stand if you reversed the state claims. I think, but again, coming back to my original point, I think both ‑‑ I'm looking for the easy way out on how to deal with this injunction. If we were to reverse the state claims, there would be, I mean, his judgment of 121704 would no longer be extant. Right. You can't preclude a subsequent judgment with a judgment that isn't a judgment. I guess it's the way I'd analyze it. If the judgment goes away, there's nothing that can have preclusive effect because there's no determination extant in Oregon. That would certainly be a satisfactory resolution, provided that the folks in Minneapolis could keep the result they got in Minneapolis, which will result in ‑‑ Well, that's between you and the folks in Minneapolis. Yes, that's really my point. One of my points is that, in effect, what Judge Jones did was reach around and predetermine the preclusion argument in Minneapolis for the Minnesota court and eliminate or try to eliminate the appellate process in Minnesota. Couldn't you have brought up in the case out here the same claims you were making in Minnesota? You concluded that in the federal case. So shouldn't you have concluded it, and doesn't that preclude you from now under issue of preclusion going ahead and saying the injunction isn't okay? We were removed and remanded. You were opted out of. You didn't opt in to the case in Oregon. Is that right? That's correct. The sequence was there was an opt‑in class. Then we filed first, the first opt‑out class. And then the defendants, I mean the plaintiffs here, filed an opt‑out class subsequently. We were certified first as an opt‑out class in Minnesota. And then the defendants and the plaintiffs stipulated in Oregon to an opt‑out class. The key issue here, there seems to be two analytical channels that you looked at. One is what did the judge do? But I think the first one you look at is what did the defendants do? Because under the WOTAC case, this court has made it clear that the failure to object to the prosecution of dual proceedings while both proceedings are pending constitutes waiver of claim preclusion. And that really says it all. And I think further, Judge Silverman in the Sandpiper Village case nailed it when he said that a defendant cannot have it both ways. You can't litigate in state court and hope for a win, but obtain an injunction of the state proceedings when you lose. And that is exactly what this defendant is attempting to do. After the Minnesota case was moving along, the MDL plaintiffs made their first attempt to have an overt injunction in Oregon. Farmers opposed that. They opposed it again. They opposed a stay in Minnesota because they wanted to keep Minnesota alive as a potential end run around Judge Jones' findings. They figured that they could undermine Judge Jones' findings, which they didn't particularly care for, in Minnesota. They went to trial in Minnesota. They moved to summary judgment. They tried the case in Minnesota. They lost in Minnesota. And the MDL plaintiffs came in again and said, stay in Minnesota. And again, farmers opposed it because the court in Minnesota had not yet let them know they were going to lose on penalties. When they found out they were going to lose on penalties, only then, for the first time, did farmers say, oh, no, we shouldn't be in Minnesota, this claim preclusion in Oregon. Well, that's precisely the situation that Rotech addresses and that Sandpiper Village addresses. You can't do that. It creates manipulation of the court. It is inequitable, unjust, and improper. And what the court did in Oregon was put so much weight upon the amount of effort that it had put into its decision in Oregon that it was swayed to stay in Minnesota for fear of something different happening in Minnesota. It is a question of what claims in Minnesota were not litigated in Oregon. Well, first of all, I don't think the state law claims were. We had completely different jury instructions based upon the Minnesota regulations that in no way resembled the standard applied in the Oregon case. So there were claims in Minnesota that were not litigated in Oregon. Is that right? Yes. Couldn't they have been litigated in Oregon if they'd been brought into the Oregon case? So wasn't there a waiver that way, too? No, because the court in Oregon remanded the case back to Minnesota. But then it came back again. I'm sorry? Didn't it come back again? Well, the court said that the court in Oregon had many opportunities, as did this defendant, to take that route and try to get the case back here. So what you're saying is the plaintiffs out here in Oregon could have, but they didn't have time because it was already remanded back to Minnesota and they couldn't do it, couldn't bring in the claims that were left out. Is that right? I think you'd have to ask them. I just only know what they did and what they didn't do. I'm talking about what you did, what your clients did. What our clients did was, first of all, they weren't part of the opt-in class, and so they filed their own opt-out class. Okay. And then we were the first opt-out class, and they then filed the second opt-out class. So we were already down the road when they filed their first opt-out class. But what wasn't decided here, based at least upon what is in Judge Jones's record, is the proper standard in Minnesota, and that discussion occurred in the prior appeal. It was a discussion of Minnesota. And one of the states that counsel stated did have different regulations was Minnesota, and the jury instructions in Minnesota turned on those regulations, not upon the same ones that Judge Jones. So there's an important difference. Secondly, the penalties were never litigated here, for whatever reason plaintiff's counsel here didn't litigate the penalties. In addition, there was no injunction here. Now, one of the other elements of the issuance of an injunction under the ORITS Act is found in the Kit Kam Choo case, where affirming what is said in the Atlantic coastline cases, the United States Supreme Court said that an essential prerequisite for applying the re-litigation exception is that the claims or issues which the federal injunction insulates from litigation in state proceedings actually have been decided by the federal court. But there's no circuit law in the Western System case that says that that isn't true. I'm sorry, Your Honor, I didn't catch that. Western Systems v. ULLOA 958-2-864. It says it was actually litigated or what could have been litigated. That's still the law of the United States. That is directly contrary to what the Supreme Court said in Kam Choo. Because what they said is it's what the early federal court actually said that controls. So for plain claim preclusion purposes, the Supreme Court has made clear that you can't enjoin, you can't protect a judgment on every conceivable issue. You protect a judgment on what you actually ruled on. And on that point, though, again, we don't really have to reach that because I think the conduct of the defendant creates waiver of the whole claim preclusion argument under Sandpiper and under Rotec. We just don't get there because this defendant knew exactly what it was doing. And what it was doing was what this court said in Sandpiper you can't do. And Judge Jones allowed them to do it because I believe he got caught up in wanting to control the outcome of this case. But constitutionally, that's not how our system works. Parallel litigation is envisioned. Parallel litigation is permitted, except under the most extraordinary circumstances where essentially, and I think this is what the statute was intended for, is somebody loses in federal court and runs out and files a state court action. That's fine. Then the federal court should enjoin that. But what we have here is a defendant acquiescing in two-track litigation, particularly after the findings by Judge Jones because it wanted to. It wanted the Minnesota court to rule because it thought it could undermine Judge Jones. And having made its bed, it gets to lie in it. As the court said in Sandpiper, you cannot simply wait to see how the second hand plays out and decide which of the two hands you've been playing you want to keep. That's not how the system works. Thank you. I'd like to reserve some time, Mr. Reed. Thank you. May it please the Court. Let me start with Judge Silverman's question. I think the easy way to deal with this appeal is to dismiss it for want of jurisdiction because it was untimely. And I do think that to the extent the Court deals with the state law claims, remands them, I must in all candor say yes, that would result in the injunction being vacated. I don't think on the Minnesota claims there's a need to remand the Minnesota claims in the main appeal. The only difference that the plaintiffs in that case pointed to between federal and Minnesota law was the Minnesota law required that discretion and judgment be regularly exercised. And we believe that Judge Jones' findings support that legal finding. I think Judge Jones, in his ruling, that the laws were comparable, viewed those as comparable standards. But I do think that there's a significant jurisdictional problem here. Well, why isn't this a proper motion under Rule 60? It is not, Your Honor. Why? For several reasons. First, nothing happened after the January 2005 injunction was issued by Judge Jones, except the State court, Judge Larson, conformed to the injunction. He said, I'm not going to he issued findings that said I'm issuing findings and conclusions that are not contrary to what Judge Jones ruled. And so that wasn't a change in circumstance. That's what everyone anticipated would happen, that Judge Larson would comply with the injunction, and he did. Secondly, the plaintiffs had made, before that date, before the April judgment from the Minnesota court, the plaintiffs had made exactly the same arguments they made in their so-called Rule 60 motion. In March of 2005, the plaintiffs argued that farmers had acquiesced in both courts and that the penalties they were seeking in Minnesota had not been awarded in the federal action. So nothing new had happened with the April 5 judgment. Therefore, Rule 60b motion was improper. Well, what was the plaintiff to do? He got the injunction ex parte, right? But the judge. You can file a motion for reconsideration. Reconsideration of what? Well, the judge, it wasn't ex parte in the sense that they weren't allowed to argue, but they didn't have their papers in, and then the judge entered it and said he would rule at the earliest possible opportunity the plaintiffs could file a motion for reconsideration. This court's decision in Credit Suisse makes clear that there's a 10-day limit for a motion for reconsideration. It's jurisdictional, and that's the only way to toll the time for appeal. So what the plaintiffs should have done, they knew the arguments. They had been making them all along. They should have filed a motion saying farmers acquiesced. There's nothing inconsistent about what's going on in Minnesota. That would have been the proper way to do it. They waited. I think what's pretty clear is that the plaintiffs waited, as they were entitled to do in terms of their litigation strategy, to see what the Minnesota court would do. Once the Minnesota court conformed, complied with the injunction, they thought about it for several months and finally filed a motion. So I think they waived their rights to seek an appeal in this case, and there's no jurisdiction. On the merits, first, this acquiescence point, farmers did not want to be sued in either jurisdiction. I think the notion that farmers wanted to be litigating in both jurisdictions is incorrect. But both sides vigorously pursued their positions in both courts. In the Parsons-Steele decision, decisions of this court makes clear there's nothing improper about that, and Judge Jones rejected the notion that there was anything improper about that. With respect to the acquiescence point, the Sandpiper decision and Judge Silverman's concurrence in that decision makes clear that if there's a point of no return, that point is where the state court rules on the race judicata issue. And that did not happen in this case. The state court did not rule on it. And Judge Jones, in order to preclude relitigation of the very same issues, issued a nearly targeted injunction to protect his judgment after a complicated federal proceeding, to protect it. And I think that was well within his discretion. The other point I wanted to make just briefly relates to this question of the court's power. And I think plaintiffs have conceded that Judge Jones had the power to issue this injunction. So if the court gets to the merits, it's a very limited inquiry. Was Judge Jones wrong with respect to the fact that there was no changed circumstance if we treat this as a Rule 60d motion? Clearly, he was right. There were no changed circumstances for the reasons I mentioned earlier. And secondly, did he abuse his discretion in making that finding? And I think that he did not abuse his discretion. And so for those reasons, we would request that the court dismiss this appeal for want of jurisdiction or, in the alternative, affirm the injunction because the judge did not abuse his discretion in issuing it. Oh, one last point to Judge Rhodes' question about the procedural posture. I just want to clarify. The named plaintiffs in the Manner case in Minnesota are class members in the MDL. They did not opt out of the Minnesota class. And in the MDL, the plaintiffs argued that the plaintiffs, representing the manner named plaintiffs, argued that they were exempt from the Minnesota overtime laws. Judge Jones ruled that some of them were and some of them weren't. That was the exact issue, the crucial issue, in the Minnesota litigation. And so those issues were litigated in the federal court in Oregon. And as Judge Rhodes was asking, yes, they could have raised all these issues. They asked for an injunction in the federal action. They could have asked for penalties. They asked for all relief that was just and proper in the federal action. And it's classic claim splitting for those plaintiffs who were part of the MDL in Oregon. And the injunction only applies to those plaintiffs, not to plaintiffs in Minnesota, who were not part of the federal action. Thank you. Thank you. Mr. Reed, you have about three minutes and change. I don't want to be sued, but I sure wanted to litigate once they were. And that is really the point here. Farmers was well aware that there were attempts by the MDL plaintiffs to stay the Minnesota case. They opposed them. They didn't stand on the sidelines. They opposed them. There were attempts by the MDL plaintiffs to have Judge Jones enter an All Writs Act injunction. They didn't stand on the sidelines and say, we didn't want to be sued. We'll see what happens. They opposed the initial motions. They actively sought litigation in Minnesota. Why? Two reasons. One, they thought they could get around Judge Jones' findings in Oregon. And two, I think they thought they were going to have an easy time in Minnesota. Well, they got clobbered in Minnesota on the penalties that nobody apparently even dealt with in Oregon. And then suddenly, once they knew they were going to get clobbered on the penalties, the $6.5 million, suddenly they got religion and they moved for exactly the kind of injunction that they had previously said shouldn't issue. And when the MDL plaintiffs again tried to stay, what did they do? They opposed it until the magical day when it was going to cost them $6.5 million, at which point they said, I think we'll fold the cards in Minnesota and we'll come back and we'll play the Oregon hand now. Thank you. And Judge Jones used his discretion in letting them get away with it because the Ninth Circuit Court of Appeals has said you can't do that. You can't play the courts off against one another and wait for the best result. If they truly were concerned about claim preclusion, they would have joined in the efforts to stop me in Minnesota. They didn't. They opposed them. They opposed them because they wanted another bite at the apple because they didn't like what happened in Oregon. And when that bite turned out to be sour, they said, okay, never mind, we'll go back to Oregon. You cannot do that. This court has said on several occasions you cannot do that. Finally, with respect to the timing issue, I think the court asked the correct question. What were we to do? There was not a crafted injunction that told the Minnesota court what it was precluded from finding. There was a general statement of don't do anything contrary. Well, what did that mean? Did that mean don't issue anything with respect to the penalties? We didn't know. Did that mean that you were precluded from finding in favor of people who weren't part of the MDL? We didn't know that. Certainly we had to protect them. And as to people who were part of the MDL, what did not contrary mean? Did that mean not contrary with respect to penalties? Not contrary with respect to injunction? Or did it mean not contrary with respect to just liability on the actual back wages? There was no way to know that until there was some indication of what it meant. And 60b-5 says we may seek relief from a judgment if it is no longer equitable but the judgment have prospective application. And something did happen. The idea that nothing happened is ridiculous. Something did happen. The judge in Minnesota stated this is what I think it means. We then came back to the court in Oregon and said this is what the judge thinks it means. You can't mean that. And the judge said yes, I do, at which point we appealed. I think there is no other conceivable way we could have done it without just speculating about what Judge Jones had in mind. Thank you. Mr. Boutrous, thank you. Mr. Rubin, thank you as well. The case is just started. Thank you. Thank you. Thank you.
judges: Silverman , Gould, Rhoades